### THE TRANSFER NO. 6.

### THE E. H. MEAD.

### KNICKERBOCKER ICE CO. v. THE TRANSFER NO. 6.

### NEW YORK, N. H. & H. R. CO. v. THE E. H. MEAD.

(District Court, E. D. New York.   April 14, 1898.)

COLLISION—TUGS—VESSELS IN TOW—NEGLIGENCE.

    While the steamtug Mead was taking the barge Pawtuxet from a slip in New York, on the East river, and while the stern of the barge was still partially within pier 127, and her bow pointing a little north of east, and in

the direction of the Morrisania shore, Transfer Tug No. 6, with a car float on her port side, struck the stem of the Pawtuxet, and injured her. Tug No. 6 and car float had shortly before backed from a slip on the Morrisania shore, had straightened to the northward, with the intention of delivering the floats at a dock practically opposite the Pawtuxet. *Held,* that the accident happened entirely from the negligence of Tug No. 6 in running too close to the Mead and Pawtuxet.

Benedict & Benedict, for Knickerbocker Ice Co. and The E. H. Mead.

Henry W. Taft, for New York, N. H. & H. R. Co. and The Transfer No. 6.

THOMAS, District Judge.    While the steamtug Mead (dimensions, 120 feet long by 22 feet wide) was taking the barge Pawtuxet (dimensions, 245 feet long by 40 feet wide) from the slip between 127th and 128th street, New York, on the East river, and while the stern of the barge was still partially within pier 127, and her bow pointing a little north of east, and in the direction of the Morrisania shore, Transfer Tug No. 6 (dimensions, 100 feet long by 20 feet wide), owned by the New York, New Haven & Hartford Railroad Company, with a car float (dimensions, 227 feet long by 33 feet wide) on her port side, struck the stem of the Pawtuxet, and injured her.    Tug No. 6 and car float had shortly before backed from the lower of the three slips belonging to the railroad company on the Morrisania shore; had straightened to the northward, with the intention of delivering the floats at the dock immediately north of the upper slip, which dock was practically opposite the Pawtuxet when her bow faced towards the Morrisania shore.

It is claimed on the part of Tug No. 6 that the stern of the float went slightly to the south, and to about the middle of the river, and that, when she straightened about, the starboard side of the tug was some 50 feet from the racks of the ferry on the east side, which distance was reduced to 25 feet at the time of the accident.    It is also contended by the captain of Tug No. 6 that a line running from the stern of the Pawtuxet shoreward, and estimated by him to be some 60 feet in length between the stern and the end of pier 127, parted or was thrown off, and that the barge, thus released, floated eastwardly, as the Mead was so operating at the time as to give her that direction, and that the barge, thus released and impelled, went so far across the river as to strike the port side of the float.    It is claimed in behalf of the Mead that she was attached to the Pawtuxet by a line some 30 feet in length; that the bow of the barge was east of the tug; that the tug was so much pointed towards the New York shore that her operation tended to hold the stern of the barge to the westward, while she was being brought about; and that Tug No. 6 and her car float backed westwardly beyond the Mead's bow, and took her course so near to the port side of the Mead as to rub against the same, and finally to strike the stem of the Pawtuxet with the port side of the car float at a point astern of the bow of the latter.

The witnesses for the tug and the barge all give the same evidence as to the relative positions of the Pawtuxet and Mead, and their description of the accident is similar.    This description in accuracy seems

preferable. The distance from pier 127 to the Morrisania side of the river is about 450 feet. The accident could not have happened as stated by the captain of Tug No. 6, unless the Mead was within about 100 feet of the east shore, and so pointed as to give an eastwardly direction to the barge, as she drew upon the same, and also so disposed as to allow the barge to pass the Mead, so that the former would be struck, and not the Mead herself. The evidence is general and credible that the Mead was pointing substantially down the river; that her stern line was about 30 feet in length. It would be difficult, and perhaps impossible, in view of this, to place the Mead sufficiently eastwardly to either give the barge a motion which would carry her eastwardly, as contended by Capt. Simms, or at least that would allow her to go sufficiently to the eastward to collide, unless she dragged the Mead with her, or unless the Mead and her stern line were stretched across the river about in front of the bow of the barge. In other words, the Pawtuxet, 245 feet in length, the Mead, 123 feet in length, and some 30 feet of stern line between the two, would have to be in almost a direct line across the river in order to allow the barge to go sufficiently eastward to strike the car float, unless her momentum was so great as to drag the Mead with her. To meet this view, probably, the captain of Tug No. 6 says that the stern of the barge, when he first saw it, was about 60 feet east of pier 127, with a stern line running to shore, and that it was the casting off of this line that enabled the barge to respond to an eastwardly impulse given to her by the tug, and to cross the river. The existence of such a line after the stern of the barge had cleared pier 127 seems improbable, inexplicable, and useless in connection with the movement of the Pawtuxet. It is contrary to the evidence of the captain of the Pawtuxet and his assistant, both of whom were on the spot, and who were fair witnesses. Yet, without some such way of accounting for the space across the river, it is not apparent that the collision could have taken place as stated by Capt. Simms. On the whole case, the account given by the people connected with the Pawtuxet and the Mead seems preferable, and the accident seems to have happened entirely from the negligence of Tug No. 6 in running too close to the Mead and Pawtuxet, of whose presence and maneuvering those in charge of Tug No. 6 had been aware, even from the time of coming from the slip. Therefore a decree should be entered in favor of the Knickerbocker Ice Company for the injury to the Pawtuxet, as a commissioner may ascertain the same, together with costs; and the libel of the New York, New Haven & Hartford Railroad Company against the steamtug E. H. Mead should be dismissed, with costs to the libelant.